IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| CONNIE BOANE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No.11-cv-2565-TMP |
| | ) |
| JAMES A. BOANE | ) |
| | ) |
|     Defendant. | ) |
| | ) |

_____

**ORDER ENTERING DEFAULT AND GRANTING MOTION FOR DEFAULT JUDGMENT**
_____

Before the court is plaintiff Connie Boane's ("Ms. Boane") Motion for Default Judgment against defendant James A. Boane ("Mr. Boane").[1] (ECF No. 93.) For the reasons discussed below, the court enters default, grants Ms. Boane's motion for default judgment, and enters judgment in the amount of $54,109.39.

## I.   BACKGROUND

Ms. Boane filed her original complaint on July 26, 2011. (ECF No. 1.) With the court's permission, Ms. Boane filed an amended complaint on January 4, 2013, alleging violations of the Stored Communications Act ("SCA"), the Computer Fraud and Abuse Act ("CFAA"), and the Tennessee Personal and Commercial Computer Act of 2013 ("TPCCA"). (ECF No. 53 at 5-9.) At that time,

_____

[1]On January 15, 2013, pursuant to the consent of the parties, the case was referred to the undersigned to conduct all proceedings. (ECF No. 59.)

defendants James A. Boane and Donna Boane[2] were represented by attorney Thomas A. Sadaka, who was associated with NeJame Law, P.A. ("NeJame"). (ECF No. 8.) Mr. Boane filed an answer to the amended complaint on January 22, 2013. (ECF No. 62.) On April 2014, the court granted Ms. Boane's summary judgment motion on the issue of Mr. Boane's liability for violations of the SCA, the CFAA, and the TPCCA.[3] (ECF No. 77.) On May 21, 2013, eight days after the parties' final pretrial conference, the court entered orders staying and administratively closing the case following Mr. Boane's Suggestion of Bankruptcy. (ECF Nos. 79; 80; 83; 84.) In December 2014, Sadaka disassociated himself from NeJame, taking several clients with him, including Mr. Boane.[4] On September 15, 2015, the United States Bankruptcy Court for the Middle District of Florida *sua sponte* entered an order in which it determined that Ms. Boane's claims for Mr. Boane's violations of the SCA, CFAA, and TPCCA were exempted from Mr. Boane's discharge pursuant to 11 U.S.C. § 523(a)(6). (ECF No. 93-1.) On

---

[2]All claims against defendant Donna Boane were later dismissed. (ECF Nos. 74; 78 at 1, n.1.)

[3]The Order on Motions for Summary Judgment is hereby incorporated by reference and is attached to this order.

[4]Sadaka was apparently later suspended from the practice of law and has subsequently been disbarred. (ECF No. 89 at 1.); Member Profile: Thomas Anthony Sadaka, THE FLORIDA BAR, https://www.floridabar.org/directories/find-mbr/profile/?num=915890 (last visited Oct. 19, 2021).

May 17, 2019, NeJame filed a notice of non-representation and the court entered an order recognizing the same. (ECF Nos. 89 & 90.)

On May 20, 2019, this court ordered Mr. Boane to inform the court whether he intended to hire new counsel or proceed *pro se* within 30 days of the court's order. (ECF No. 91.) In its order, the court warned Mr. Boane that failure to comply "may result in entry of default, default judgment, an award of money damages, and other forms of relief" entered against him. (Id. at 2.) The Clerk of Court mailed this order to Mr. Boane at the address provided by NeJame in their Notice of Non-representation: Mr. James A. Boane, 2638 Fallbrook Dr., Oviedo, Florida 32765. (ECF No. 89.) Over two years have passed, and Mr. Boane has not complied with the order.

On October 20, 2021, the undersigned entered an order granting Ms. Boane leave to move for entry of default. (ECF No. 92.) This order was also sent by mail to Mr. Boane's last known address. (Id.) Ms. Boane filed a motion for default judgment on December 17, 2021. (ECF No. 93.)

The undersigned conducted an evidentiary hearing on January 19, 2022 at 10:00 a.m. via video conference to assess Ms. Boane's damages. Present at the hearing were Ms. Boane and her counsel, attorneys Trey Jordan and Joseph Baker. Notice of the

- 3 -

hearing was mailed to Mr. Boane at his last known address, but he failed to appear. At the hearing, the court heard testimony from Ms. Boane regarding her damages. The court directed Ms. Boane's counsel to submit an affidavit to the court regarding Ms. Boane's attorneys' fees. Ms. Boane's attorney did so on January 20, 2022. (ECF No. 96.) Ms. Boane seeks $6,781.61 in actual damages, $20,000 in statutory damages, $40,000 in punitive damages, $38,880 in attorneys' fees, and $1,666.17 in litigation expenses.

## II.  ANALYSIS

Federal Rule of Civil Procedure 55 provides a two-step process for entering a default judgment. The first step is to obtain an entry of default pursuant to Rule 55(a). Rule 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. Pro. 55(a). "The fact that Rule 55(a) gives the clerk authority to enter a default is not a limitation of the power of the court to do so." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (4th ed. 2021) (citing Shapiro, Bernstein & Co. v. Continental Record Co., 368 F.2d 426 (2d Cir. 1967)). When default is entered, "the well-

- 4 -

pleaded factual allegations in the complaint are taken as true .

. ., [but] damages are not." Ford Motor Co. v. Cross, 441 F.

Supp. 2d 837, 848 (E.D. Mich. 2006); Antoine v. Atlas Turner,

Inc., 66 F.3d 105, 110-11 (6th Cir. 1995).

The second step is to obtain a default judgment pursuant to

Rule 55(b). In cases where the defaulting party has appeared,

the plaintiff "must apply to the court for a default judgment"

and "that party or its representative must be served with

written notice of the application at least 7 days before the

hearing" on the default judgment. Fed R. Civ. P. 55(b)(2). In

order to enter judgment, the court must determine the amount of

damages. Id. Under Rule 55, the court may conduct hearings or

make a referral if it needs to conduct an accounting, determine

the amount of damages, or establish the truth of any allegation

by evidence. Id.

**A.   Entry of Default**

Although Ms. Boane did not move for entry of default before

filing her motion for default judgment, the undersigned

construes the present motion as a motion for entry of default

and default judgment. Entry of default is appropriate under Rule

55 because Mr. Boane failed to defend in this action when he did

not comply with the court's order that he file notice of whether

he intended to hire new counsel or appear *pro se* by June 16,

- 5 -

2019. See Fed. Nat'l Mortg. Ass'n v. Huntington Prop. LLC, No. 2:19-cv-2470-MSN-dkv, 2019 WL 9103423, at *2 (W.D. Tenn. Oct. 30, 2019)("[D]efault judgment is appropriate 'when the adversary process has been halted because of an essentially unresponsive party.'")(quoting  Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal and Glass, LLC, 635 F. Supp. 2d 21, 25 (D.D.C. 2009); see also HMP Automotive Consultants, LLC v. Pierce Prop. Grp., LLC, No. 5:17-CV-226-KKC, 2018 WL 2050135, at *1 (E.D. Ky. May 2, 2018)(finding entry of default warranted when defendant failed to comply with court's order to retain counsel or file a notice that he intended to proceed pro se). Over two years have passed since the court's order, and Mr. Boane has not had counsel appear on his behalf nor has he appeared pro se. Mr. Boane has been served at his last known address with the order granting Ms. Boane leave to file for entry of default, Ms. Boane's motion for default judgment, and the order setting an evidentiary hearing on damages. Mr. Boane has not responded to any of these filings. Therefore, the undersigned enters default under Rule 55(a) for failure to defend. HMP Automotive Consultants, LLC, 2018 WL 2050135, at *1.

**B.   Default Judgment**

Because Mr. Boane has appeared in this case, he was entitled to notice of the application for default judgment at

- 6 -

least seven days before the hearing. Fed. R. Civ. P. 55(b).

Here, the notice requirement was met. Mr. Boane was served with

Ms. Boane's motion for default judgment by physical and

electronic mail on December 17, 2021. (ECF No. 93 at 6.) The

hearing was held thirty-three days later, on January 19, 2022.

(ECF No. 95.) Because entry of default is appropriate in this

case, the factual allegations in the complaint are taken as

true. Ford Motor Co., 441 F. Supp. 2d at 848. Thus, the

undersigned turns to the assessment of damages. Fed. R. Civ. P.

55(b).

### 1. Actual Damages

Ms. Boane is entitled to damages under the SCA, CFAA, and

TPCCA. Both the CFAA and TPCCA limit awards to actual damages.

See 18 U.S.C. § 1030(g) (2012)("Any person who suffers damage or

loss by reason of a violation of this section may maintain a

civil action against the violator to obtain compensatory damages

and injunctive relief or other equitable relief."); T.C.A. § 39-

14-604(a) (2012)("Any person whose property or person is injured

by reason of a violation of any provision of this part may file

a civil action and recover for any damages sustained and the

costs of the civil action."). Because the SCA also allows for

actual damages, to prevent redundancy, the undersigned

exclusively considers damages under that statute.

- 7 -

"[A]ppropriate relief" for violation of the SCA includes:

(1)   such   preliminary   and   other   equitable   or
      declaratory relief as may be appropriate;

(2)   damages under subsection (c); and

(3)   a reasonable attorney's fee and other litigation
      costs reasonably incurred

18 U.S.C. § 2707(b) (2012). Subsection (c) provides:

> The court may assess as damages in a civil action
> under this section the sum of the actual damages
> suffered by the plaintiff and any profits made by the
> violator as a result of the violation, but in no case
> shall a person entitled to recover receive less than
> the sum of $1,000.

Ms. Boane testified that she sustained actual damages of
$6,781.61 in investigating the unauthorized access of her United
Healthcare account arising directly from Mr. Boane's violation
of the SCA. This testimony is supported by an affidavit from her
former attorney, Mitzi Johnson. (ECF 67 at 1-3.) The undersigned
finds the $6,781.61 was actually and reasonably incurred as a
result of Mr. Boane's violations. The court awards Ms. Boane
$6,781.61 in actual damages.

### 2. Statutory Damages

At the hearing, counsel stated that Ms. Boane was also
seeking statutory damages in the amount of $20,000.[5] Counsel
argued that the SCA allowed for $1,000 of statutory damages "per

---

[5]This argument is not included in Ms. Boane's briefing.

data breach occurrence." Because forty-five total data breaches

occurred, counsel argued that Ms. Boane is entitled to $45,000

in statutory damages, however Ms. Boane only requested $20,000.

As noted above, 18 U.S.C. § 2707(c) states:

> The court may assess as damages in a civil action
> under this section the sum of the actual damages
> suffered by the plaintiff and any profits made by the
> violator as a result of the violation, but in no case
> shall a person entitled to recover receive less than
> the sum of $1,000.

The undersigned does not read this subsection as allowing for

$1,000 of statutory damages per data breach. Rather, the text of

the statute allows a plaintiff to collect actual damages whose

amount cannot be less than $1,000. The $1,000 in subsection (c)

is not a separate statutory damage award, rather, it sets a

floor for an award of actual damages. See Vista Mktg. v.

Burkett, 812 F.3d 968 (11th Cir. 2016). The court has granted

actual damages in the amount $6,781.61, which is an amount

greater than $1,000.

### 3. Punitive Damages

At the hearing, counsel for Ms. Boane stated that Ms. Boane

is seeking $40,000 in punitive damages. "If the violation [of

the SCA] is willful or intentional, the court may assess

punitive damages." 18 U.S.C. § 2707(c). Because any SCA

violation requires intentionality, the statute affords little

guidance as to the nature of conduct warranting punitive damages. See Vista Mktg., 812 F.3d at 975 n.15 ("[A]s a practical matter, virtually all violations under § 2707(a) are subject to an award of punitive damages."). "[A] key feature of punitive damages [is] that they are never awarded as of right, no matter how egregious the defendant's conduct." Smith v. Wade, 461 U.S. 30, 52 (1983). Rather, once the plaintiff proves that the defendant's conduct triggers consideration of punitive damages, the factfinder makes the "discretionary moral judgment" whether or not to award punitive damages. Id. In exercising his discretion, the factfinder should consider that "[t]he purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." Memphis Comm. School Dist. v. Stachura, 477 U.S. 299, 306 n.9 (1986).

The United States Supreme Court has noted that an award of punitive damages is subject to constitutional limitations. Pursuant to the Due Process Clause of the Fourteenth Amendment, a "grossly excessive" punishment may not be imposed. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 562 (1996). In evaluating whether an award is "grossly excessive," the BMW court analyzed three factors: (1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the harm or

potential    harm    suffered    by    the    plaintiff    and
the punitive damages award; and (3) the difference between the
remedy    and    the    civil    penalties    imposed    in    comparable
cases. Id. at  575; Cooper  Indus.,  Inc.  v.  Leatherman  Tool
Group, 532 U.S. 424, 435 (2001); State Farm Mut. Auto. Ins. Co.
v. Campbell, 538 U.S. 408, 123 (2003).

Among    these    factors,    the    Court    noted    that    the    "most
important indicium of reasonableness of a punitive damages award
is the degree of reprehensibility of the defendant's conduct."
BMW, 517 U.S. at 575. To determine the reprehensibility of a
defendant's conduct, a court must consider whether: "the harm
caused was physical as opposed to economic; the tortious conduct
evinced an indifference to or a reckless disregard of the health
or safety of others; the target of the conduct had financial
vulnerability; the conduct involved repeated actions or was an
isolated incident; and the harm was the result of intentional
malice, trickery, or deceit, or mere accident." Campbell, 538
U.S. at 419.

With  respect  to  the  second  factor,  the  Court  recognized
that    an    award    of punitive damages must    bear    a    "reasonable
relationship"  to  the  amount  of  compensatory  damages. BMW, 517
U.S. at 580 (finding that a $2,000,000 award of punitive damages
did  not  bear  a  reasonable  relationship  to  the  $4,000  award  of

- 11 -

compensatory damages because it was 500 times the amount of the actual harm). While "reject[ing] the notion that the constitutional line is marked by a simple mathematical formula," id. at 582, the court has suggested that the relevant ratio is "not more than 10 to 1." Id. at 581. On other occasions, the Court has advised that "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process", Campbell, 538 U.S. at 425, and that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Id. (citing Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23 (1991)). Furthermore, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." Campbell, 538 U.S. at 425 (stating that a compensatory award of "$1 million for a year and a half of emotional distress" was substantial and "likely would justify a punitive damages award at or near the amount of compensatory damages").

Applying the first factor, Mr. Boane's access of Ms. Boane's medical and health insurance records on her United online account was clearly intentional. Courts have settled that determining whether there was unauthorized access under

- 12 -

the SCA is akin to determining whether there was trespass to property. Cardinal Health 414, Inc. v. Adams, 582 F. Supp. 2d 967, 976 (M.D. Tenn. 2008)(citing Theofel v. Farey-Jones, 359 F.3d 1066, 1072-73 (9th Cir.2004)). "A big distinction between committing the tort of common law trespass and violating the SCA, of course, is that intentional conduct is required to violate the SCA, *i.e.,* a highly culpable state of mind is required." Id. In order to gain access to Ms. Boane's private medical information, Mr. Boane, "indicated that the password for the account had been forgotten . . . and reset Connie Boane's password to her United online account and accessed the account with the new password." (ECF No. 77 at 3.) While accessing her account Mr. Boane accessed and viewed "approximately 50 online health benefit account entries." (ECF No. 53 at 3.) The court finds Mr. Boane's intentional wrongful access to Ms. Boane's private medical information reprehensible, especially since it was done in connection with the pending post-divorce proceedings.

In applying the second factor, the court finds a punitive damages award equal to Ms. Boane's compensatory damages to be appropriate. This is well within the lines of constitutional propriety. Regarding the third factor, there is a significant range of punitive damages awards in cases involving violations

of the SCA. See, e.g., Vista Mktg., 812 at 975 n.15 (affirming

zero-dollar punitive damages award by jury in a case where

defendant viewed her ex-husband's emails); Brown Jordan Int'l,

Inc. v. Carmichle, 0:14-CV-60629-ROSENBERG/BRANNON, 2016 WL

815827, at *44 (S.D. Fla. Mar. 2, 2016)(awarding $38,322.11 in

punitive damages, an amount equal to actual damages, where

company accessed employee's personal email accounts multiple

times over six months); Wyatt Tech. Corp. v. Smithson, No. 05-

1309-DT (RZx), 2006 WL 5668246, at *9, *11 (C.D. Cal. Aug. 14,

2006), rev. on other grounds, 345 F. App'x 236 (9th Cir.

2009) (awarding $100,000 in punitive damages where violator

obtained trade secrets by setting up system to continuously

monitor victim's email account). Under the facts of this case,

the court finds the award of $6,781.61 in punitive damages is

appropriate.

## 4. Attorney's Fees

Ms. Boane's attorney submitted an affidavit and attached

statements detailing Ms. Boane's attorneys' fees, which total

$38,880 in fees and $1,666.17 in litigation expenses. "In the

case of a successful action to enforce liability under [the

SCA], the court may assess the costs of the action, together

with reasonable attorney fees determined by the court." 18

U.S.C. § 2707(c). "The trial court's initial point of departure,

when calculating reasonable attorney fees, is the determination
of the fee applicant's 'lodestar,' which is the proven number of
hours reasonably expended on the case by an attorney, multiplied
by a reasonable hourly rate." Isabel v. City of Memphis, 404
F.3d 404, 415 (6th Cir. 2005). "The question is not whether a
party prevailed on a particular motion, nor whether, in
hindsight, the time expended was strictly necessary to obtain
relief achieved; instead, the question is whether a reasonable
attorney would believe the work to be reasonably expended in
pursuit of success at the time when the work was
performed." Hunter v. City of Copper Hill, Tenn., No. 1:09-cv-
238, 2013 WL 5278673, at *3 (E.D. Tenn. Aug. 26, 2013) (internal
citation and quotation omitted), adopted by, 2013 WL 5278673, at
*1 (E.D. Tenn. Sept. 19, 2013).

Ms. Boane retained McDonald Kuhn, PLLC at an hourly rate of
$215 for partners and $175 for associate attorneys. (ECF No. 96
at 2.) Both of Ms. Boane's attorneys attest that this rate is
below the amount typically charged in federal court litigation
involving statutory claims. (Id.) Ms. Boane's attorneys
submitted billing statements showing $19,368.00 in fees for
105.6 hours of work performed between June 2, 2011 and June 24,

- 15 -

2012,[6] $18,125.50 in fees for 97.5 hours of work performed between September 21, 2012 and March 19, 2014,[7] and $2,386.50 in fees for 11.1 hours of work performed February 11, 2019 through January 20, 2022.[8] (ECF No. 96 at 2.)

This case has been pending before the court for over ten years and was very close to trial when Mr. Boane's suggestion of bankruptcy was filed. (ECF No. 80.) Additionally, the fees are below market value. As a result, the court finds the attorneys' fees and litigation expenses to be reasonable. The court awards $38,880 in attorneys' fees and $1,666.17 in litigation expenses.

### III. CONCLUSION

For the reasons discussed, Ms. Boane's motion for entry of default and default judgment is GRANTED. Judgment is awarded in the amount of $54,109.39. The Clerk of Court shall mail this order to Mr. Boane at the following address: Mr. James A. Boane, 2638 Fallbrook Dr., Oviedo, Florida 32765.

---

[6]Attorney Baker performed 83.40 hours of work at a rate of $175.00 per hour. Attorney Jordan performed 22.20 hours of work at a rate of $215.00 per hour.

[7]Attorney Baker performed 76.30 hours of work at a rate of $175.00 per hour. Attorney Jordan performed 22.20 hours of work at a rate of $215.00 per hour.

[8]Attorney Baker performed 7.50 hours of work at a rate of $215.00 per hour. Attorney Jordan performed 3.60 hours of work at a rate of $215.00 per hour.

IT IS SO ORDERED.

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

February 3, 2022
_____
Date